IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

CHRISTOPHER HARRISON,
INDIVIDUALLY, AND AS LEAD
PLAINTIFF ON BEHALF OF THE
SURVIVING CHILDREN OF AMANDUS
HARRISON, DECEASED: AUTUMN
HARRISON, AUSTIN ANDERSON,
KEEGAN WATSON, ARYANA
WATSON, AND DERRICK ATKINS ON
BEHALF OF A.H.

     Plaintiff.

v.

JOPEN, LLC; MARTIAN SALES, INC.;
JOHNSON FOODS, LLC; LP IND. INC.;
NUZA, LLC (F/K/A ADVANCED
NUTRITION, LLC; D/B/A NUZA
LOGISTICS); CALIBRE
MANUFACTURING, LLC; OLISTICA
LIFE SCIENCES GROUP; FMK GROUP,
INC. (D/B/A JORDAN PROCESS); PNW
HOLDING, LLC (D/B/A JORDAN
PROCESS); CC US HOLDINGS, LLC;
PEYTON SHEA PALAIO; MARK
JENNINGS; EYAL DAVID GABBAY; and
MARK REILLY.

     Defendants.

Civil Action No. 2:25-cv-00030
JURY TRIAL DEMANDED

_____

**COMPLAINT FOR DAMAGES AND JURY DEMAND**
_____

     Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of

Amandus Harrison, Decedent, by and through his attorneys, for his Complaint for Damages and

Jury Demand, states and alleges the following:

# I. JURISDICTION

1.     At all times relevant to this action, decedent, Amandus Harrison, was an individual who, prior to April 29, 2024, resided in Greene County, Tennessee.

2.     At all times relevant to this action, Plaintiff Christopher Harrison ("Chris"), is and was in all relevant times a resident of the State of Tennessee and the County of Jefferson.

3.     Chris is the natural son of decedent, Amandus Harrison and is authorized to claim wrongful death damages for the death of Amandus Harrison, pursuant to TN Code § 20-5-106. He does so as lead plaintiff on behalf of himself and the surviving children of Amandus Harrison, including, Autumn Harrison, Austin Anderson, Keegan Watson, Aryana Watson, and Derrick Atkins on behalf of A.H.

4.     At all times relevant to this action, Defendant JOPEN, LLC (d/b/a A1 Wholesale; Alphabet Wholesale, Inc.; Party Nuts; Party Nuts Distribution; CSA Managing, LLC; JDA1, LLC; Telescaph Inter Texas, LLC; Aether, LLC; Aghosh Corp.; Uziel; Innovo Activas; Chorg, Remar, WholeKon, and Evolutionary Organics) ("JOPEN") was and is a Texas limited liability company. Jopen, LLC is a citizen of Texas, domiciled at 3616 Maple Ave., Dallas, Texas 75219. David Gabbay (a/k/a Eyal David Gabbay) is the sole member of Jopen, LLC. Mr. Gabbay is a citizen of Texas residing at 10227 Gaywood Rd., Dallas, TX 75226. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. Upon further information and belief, JOPEN conducts its kratom activities as part of the larger Olistica-OPMS kratom enterprise, which operates through a web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names. Defendant JOPEN is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, because

2

JOPEN transacted business, contracted to supply services or things, and committed a tort within this State. Upon information and belief JOPEN and Martian Sales, Inc., are parties to agreements for the national distribution of O.P.M.S. kratom, including to and within Tennessee. Upon information and believe, JOPEN and Martian Sales, Inc., distribute directly to retailers within Tennessee or in the alternative contract with a resident Tennessee distributor.

5.      At all times relevant to this action, Defendant MARTIAN SALES Inc. (d/b/a O.P.M.S. and O.P.M. Kratom) ("MARTIAN SALES"), is a foreign corporation incorporated in the State of Wyoming with its principal place of business in Cheyenne, Wyoming. Upon further information and belief, Plaintiff alleges that MARTIAN SALES conducts its kratom activities as part of the larger Olistica-OPMS kratom enterprise, which operates through a web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names. Defendant MARTIAN SALES is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, because MARTIAN SALES transacted business and committed a tort within this State. Upon information and belief JOPEN and Martian Sales, are parties to agreements for the national distribution of O.P.M.S. kratom, including to and within Tennessee. Upon information and believe, JOPEN and Martian Sales distribute directly to retailers within Tennessee or in the alternative contract with a resident Tennessee distributor.

6.      At all times relevant to this action, Defendant JOHNSON FOODS, LLC was and is a Wyoming limited liability company with citizenship in Wyoming. The State of Wyoming

does not require limited liability companies incorporated within Wyoming to identify its members.[1] Upon information and belief, the only known member of JOHNSON FOODS is Alexander Cohen, a resident of Georgia. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. On information and belief, JOHNSON FOODS conducts its kratom activities as part of the larger Olistica-OPMS kratom enterprise, which operates through a web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names. Defendant JOHNSON FOODS is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, the Tennessee Long-Arm Statute, § 20-2-223, because JOHNSON FOODS transacted business and committed a tort within this State.

7.      Upon information and belief, at all times relevant to this action, Defendant LP IND. Inc. (d/b/a Olistica Life Sciences Group; Olistica Group; Olistica; O.P.M.S.; Companion Agriculture; Companion AG; CAG Holdings, LLC; RMH Holdings, LLC; Jordan Process; Cascade Naturals; Della Terra Pharmaceuticals; and Canopy Corp.) ("LP"), was and is a Wyoming limited liability company with its principal place of business in Wyoming. Upon information and belief, the sole member of LP is FMK Group, Inc., a Wyoming corporation with its principal place of business in Wyoming. FMK Group, Inc. is therefore a citizen of Wyoming.

---

[1] *See generally,* the Wyoming Limited Liability Act, Wyo. Stat. §§ 17–29–101 et seq. Wyoming's unique business registration procedures allow LLCs to conceal the identities and residency of LLC members. As a result, Plaintiff is not presently able to allege the citizenship of each member with complete accuracy and confidence. This is due to no failure of diligence on the part of Plaintiff but is instead the result of well-known limitations of the Wyoming Limited Liability Act. *See e.g. B.V. Reomie Automateriaal v. IDE Invest & Real Estate, LLC*, 22-CV-00091-SWS, 2022 WL 16901968, at *2 (D. Wyo. Nov. 11, 2022). Committee Notes regarding FRCP 7.1 (a)(2) state that, as Plaintiff as done here, "pleading on information and belief is acceptable at the pleading stage." To the extent this Court remains unsatisfied by Plaintiff's amended complaint and the allegations of LLC citizenship herein, Plaintiff requests that pursuant to this Court's discretionary powers, the matter remain pending, and Defendants meet their burden under FRCP 7.1 to identify LLC members and the citizenship attributed to those parties. *See Vidstone, LLC*

Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. Upon further information and belief, LP conducts its kratom activities as part of the larger Olistica-OPMS kratom enterprise, which operates through a web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names. Defendant LP is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, because LP IND. Inc., transacted business and committed a tort within this State.

8. Upon information and belief, at all times relevant to this action, Defendant NUZA, LLC (f/k/a Advanced Nutrition, LLC; d/b/a Nuza Logistics) ("NUZA") was and is a Wyoming limited liability company with its principal place of business in Wyoming. Upon information and belief, Peyton Shea Palaio is the only known member of NUZA. Peyton Shea Palaio is a citizen of Georgia residing at 3955 Ryans Lake Ter., Cumming, GA 30040. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. Upon further information and belief, NUZA conducts its kratom activities as part of the larger Olistica-OPMS kratom enterprise, which operates through a web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names. Defendant NUZA is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, because NUZA transacted business and committed a tort within this State.

---

*v. Carnival Corp.,* 115CV02666DMECBS, 2016 WL 943783, at *2 (D. Colo. Mar. 14, 2016), as an example of a matter in which the court fashioned relief to address a similar circumstance.

NUZA has been identified by MARTIAN SALES as the manufacturer of the O.P.M.S. black product by its legal counsel in other litigation.[2]

9.     Upon information and belief, at all times relevant to this action, Defendant CALIBRE MANUFACTURING, LLC ("CALIBRE") was and is a Wyoming limited liability company with its principal place of business in Wyoming. Upon information and belief, Peyton Shea Palaio is the only known member of CALIBRE. Peyton Shea Palaio is a citizen of Georgia residing at 3955 Ryans Lake Ter., Cumming, GA 30040. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. Upon further information and belief, CALIBRE conducts its kratom activities as part of the larger Olistica-OPMS kratom enterprise, which operates through a web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names. Defendant is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, because CALIBRE transacted business and committed a tort within this State.

10.     Upon information and belief, at all times relevant to this action, Defendant OLISTICA LIFE SCIENCES GROUP ("OLISTICA") (d/b/a Centralized Services; Olistica; CC US Holdings, LLC; Olistica Group;.; Liv Group Inc.; Cascade Naturals; Della Terra Pharmaceuticals ("Della Terra"); NP Pharma Holdings, LLC; OPMS; Precision Biologics; Canopy Corporation;  Innovo Activas; and Evolutionary Organics) ("OLISTICA") is an unincorporated association of kratom business interests that operates through a clandestine web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or

---

[2] See Exhibit A, Email regarding conferral between counsel for Martian Sales, Inc. and counsel for FDA, in *Martian Sales, Inc. v. U.S. Food and Drug Administration et al.,* U.S. District Court for the District of Columbia, Case No.: 1:24-cv-03031-RBW.

trade names. Upon information and belief Robert "Bob" Hoban has been the named Chief Executive Officer of OLISTICA. Upon information and belief Mark Jennings has also been and may continue to be the Chief Executive Officer of OLISTICA. Defendant is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, because OLISTICA transacted business and committed a tort within this State.

11.     Upon information and belief, at all times relevant to this action, Defendant FMK GROUP, INC. ("FMK") was and is a Wyoming corporation with its principal place of business in Wyoming. FMK is a citizen of Wyoming. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. Upon further information and belief, FMK conducts its kratom activities as part of the larger Olistica-OPMS kratom enterprise, which operates through a web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names. Defendant FMK is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, because FMK transacted business and committed a tort within this State.

12.     Upon information and belief, at all times relevant to this action, Defendant PNW Holdings, LLC (d/b/a Cascade Naturals) ("PNW") was and is a Wyoming limited liability company with its principal place of business in Wyoming. Upon information and belief, Peyton Shea Palaio is the only known member of PNW. Peyton Shea Palaio is a citizen of Georgia residing at 3955 Ryans Lake Ter., Cumming, GA 30040. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. Upon further information and belief, PNW conducts its kratom activities as part of the larger Olistica-OPMS kratom enterprise, which operates through a

7

web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names. Defendant PNW is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, because PNW transacted business and committed a tort within this State.

13. Upon information and belief, at all times relevant to this action, Defendant CC US Holdings, LLC (also doing business as Centralized Services; Olistica; Olistica Group; Liv Group, Inc.; Della Terra Pharmaceuticals; NP Pharma Holdings, LLC; O.P.M.S.; Precision Biologics; Canopy Corporation; Innovo Activas; and Evolutionary Organics) ("CC US") was and is a Wyoming limited liability company with its principal place of business in Wyoming. Upon information and belief, Peyton Shea Palaio is the only known member of PNW. Peyton Shea Palaio is a citizen of Georgia residing at 3955 Ryans Lake Ter., Cumming, GA 30040. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. Upon further information and belief, CC US conducts its kratom activities as part of the larger Olistica-OPMS kratom enterprise, which operates through a web of affiliates, individuals, shell companies, alter egos, business names, assumed names, and/or trade names. Defendant CC US is subject to the jurisdiction of this court pursuant to Tenn. Code Ann. § 20-2-223, also known as the Tennessee Long-Arm Statute, because CC US transacted business and committed a tort within this State.

14. Upon information and belief, Defendant Peyton Shea Palaio ("Palaio") is an individual who is associated with multiple entities involved in the kratom business. Palaio is a citizen of Georgia residing at 3955 Ryans Lake Ter., Cumming, GA 30040. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. Palaio is also the ringleader and mastermind behind several Defendant entities, including MARTIAN SALES.; LP; FMK; PNW;

OLISTICA; and CC US. Palaio is heavily involved in the operations of the Olistica-OPMS kratom enterprise, which operates through a clandestine, secretive, and purposely opaque web of affiliates, shell companies, alter egos, business names, assumed names, and/or trade names. This Court has personal jurisdiction over Palaio because he transacted business and committed a tort within this State.

15.     Upon information and belief, Defendant Mark Jennings ("Jennings") is an individual who is closely associated and involved with the kratom business operations of Olistica Life Sciences Group and the O.P.M.S. brand. Upon information and belief, Jennings is the current chief executive officer of Olistica Life Sciences Group. Jennings is implicated in managing and maintaining the secrecy of the supply chain and distribution practices of Olistica and its network of associated entities. Upon further information and belief, Jennings is a citizen of Georgia residing at 128 Brook Hollow Lake Trail, Cummings, Georgia 30028. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. This Court has personal jurisdiction over Jennings because he transacted business and committed a tort within this State.

16.     Upon information and belief, Defendant Eyal David Gabbay ("Gabbay") is an individual who is closely associated and involved with the kratom business operations of the O.P.M.S. brand. Gabbay is the owner and operator of JOPEN. Gabbay is implicated in, among other things, managing and maintaining the importation or acquisition of raw kratom for O.P.M.S. brand products, and the national distribution of O.P.M.S. brand kratom. Upon further information and belief, Gabbay is a citizen of Texas residing at 540 Mariah Bay Dr., Rockwall, TX. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties.  This

Court has personal jurisdiction over Jennings because he transacted business and committed a tort within this State.

17.     Upon information and belief, Defendant Mark Daniel James Reilly ("Reilly") (a/k/a Chris Dockery) is an individual who is closely associated and involved with the kratom business operations of the O.P.M.S. brand. Reilly is the owner and operator of MARTIAN SALES. Reilly is implicated in, among other things, managing and maintaining the O.P.M.S. brand, contracting for the importation or acquisition of raw kratom for O.P.M.S. brand products, and contracting for the manufacture and distribution of O.P.M.S. brand kratom. Upon information and belief Reilly's work is in part done under a pseudonym, Chris Dockery. Upon further information and belief, Reilly is a citizen of Georgia residing at 109 Wiley Bridge Court, Woodstock, GA. Plaintiff is a citizen of Tennessee. There is complete diversity of the parties. This Court has personal jurisdiction over Reilly because he transacted business and committed a tort within this State.

18.     All Defendants named in paragraphs 4-18 are alter egos of one another and operate as a web of affiliates, shell companies, alter egos, business names, assumed names, and/or trade names, including but not limited to: Aether, LLC; Aghosh Corp.; Biopharmaceutical Technology Services, Inc.; Martian Sales, Inc.; Highway 160 Way, LLC; PFI, LLC; Nuza, LLC; Nuza Logistics; Olistica Life Sciences Group; Olistica; Olistica Group; Liv Group, Inc.; Robert "Bob" Hoban; Cascade Naturals; NP Biotech; NP Pharma Holdings, LLC; OPMS; Choice Organics; Precision Biologics; FMK Group, Inc.; PNW Holdings, LLC; Jordan Process; JOPEN, LLC; LP, Ind., LLC; CAG Holdings, LLC; RMH Holdings, Inc.; Lunar Labs LLC; Martian Sales, Inc.; Beeman Inc.; Uziel LLC; 1099 Industrial LLC; 1100 Alpha LLC; Engaged

Investments LLC; LIV Group, Inc.; LGI Holdings, LLC; Axis Holdings, LLC; Calibre Manufacturing, LLC; Savro Management, LLC; Advanced Nutrition, LLC; Admin Assist, LLC; Precision Biologics, Inc; Companion Agriculture; NP Biopharma; Della Terra Pharmaceutical; Aether LLC; Allied Manufacturing Services, LLC; Telescaph Inter Texas, LLC, Bob Hoban, and Johnson Foods, LLC.

19.     All Defendants named in paragraphs 4-18 are referred to jointly as "Defendants."

20.     This case arises out of the wrongful death of Amandus Harrison that occurred as a direct and proximate result of O.P.M.S. Black Liquid kratom extract, a highly dangerous and deadly product that is imported, manufactured, distributed, and sold by Defendants to consumers, including decedent, Amandus Harrison.

21.     This case arises out of the injuries, losses, and damages suffered by Plaintiff Christopher Harrison and the other surviving children of Amandus Harrison, including, Autumn Harrison, Austin Anderson, Keegan Watson, Aryana Watson, and Derrick Atkins on behalf of A.H.

## II.  <u>GENERAL ALLEGATIONS</u>

22.     Plaintiff incorporates paragraphs 1 through 21 of this Complaint by reference as if fully set forth herein.

23.     On or about the morning of April 29, 2024, Amandus Harrison (46), a loving mother of six children, died unexpectedly as a result of ingesting O.P.M.S. Black Liquid Kratom Extract.

24.     On July 26, 2024, the U.S. Food & Drug Administration (FDA) issued a warning to consumers not to use O.P.M.S. Black Liquid Kratom because the FDA "recently received an adverse event report of a person who died after using OPMS Black Liquid Kratom."[3] The warning also notes that "this is one of many reports of serious adverse events" reported and associated to O.P.M.S. Black Liquid Kratom.

25.     Amandus purchased the kratom product directly from Golds Tobacco, a retailer in Greeneville, Tennessee.

26.     On the day Amandus passed away, she was watching her five-year-old daughter, A.H. When A.H. did not make it to school that morning, the school called her father to inform him, who called in a welfare check. Amandus was found deceased in her home.

27.     The William L. Jenkins Forensic Center performed an autopsy to determine the cause of Amandus's death.

28.     The toxicology report revealed that there was 3,400ng/mL of mitragynine (kratom) in Amandus's femoral blood.

29.     The coroner determined the cause of death to be "toxic effects of mitragynine." In other words, a kratom overdose.

30.     Amandus only consumed O.P.M.S. Black Liquid Kratom Extract Shots which she purchased at Golds Tobacco.

31.     On the day she passed and the days preceding her death, Amandus consumed exclusively O.P.M.S. Black Liquid Kratom Extract Shots.

---

[3] See, https://www.fda.gov/food/alerts-advisories-safety-information/fda-warns-consumers-not-use-optimized-plant-mediated-solutions-opms-black-liquid-kratom (last accessed January 7, 2025).

32. Amandus consumed kratom to alleviate pain caused by bulging discs and to increase her energy.

33. Kratom is the name given to botanical products derived from the leaves of the Mitragyna Speciosa tree which grows natively in Southeast Asia.

34. Medical and scientific research confirms that powdered kratom sold in the United States is far more dangerous than other natural products sold over the counter.

35. Kratom contains dozens of psychoactive compounds or alkaloids. The two most-studied alkaloids are mitragynine and 7-hydroxymitragynine. These two alkaloids bind to the same opioid brain receptors as morphine. Like opiates, these compounds can lead to analgesia (release of pain), euphoria, and sedation.

36. Kratom was not marketed as a dietary ingredient in the United States before October 15, 1994, and is therefore a "new dietary ingredient" under applicable regulatory standards. As a new dietary ingredient, kratom must not be marketed or sold for human consumption without premarket verification that it is safe for that purpose.

37. None of the named Defendants have ever satisfied the basic industry standard for establishing that kratom is safe for human consumption.

38. The most recent attempt by the kratom industry to legitimize its dangerous kratom products occurred on October 21, 2022. On that date, Defendant JOHNSON FOODS, submitted its "New Dietary Ingredient Notification for NPI-001, a Dried Leaf Powder."

39. When this notification was submitted, Defendant JOHNSON FOODS and other O.P.M.S. Defendants knew that no such notification had ever satisfied the premarket safety standards required to lawfully distribute and sell kratom under federal law.

13

40. Like premarket notifications before it, the JOHNSON FOODS New Dietary Ingredient Notification for the kratom powder was inadequate, incomplete, and incompetent to satisfy the important standards of premarket safety necessary for the safe marketing, distribution and sale of over-the-counter kratom.

41. A growing body of independent scientific and medical research and literature confirms that no form of psychoactive kratom will ever satisfy the basic standard of premarket safety when it comes to over-the-counter sale of kratom for human consumption.

42. Kratom is known to cause a wide range of adverse events, including nervousness, agitation, aggression, sleeplessness, hallucinations, delusions, tremors, loss of libido, constipation, skin hyperpigmentation, nausea, vomiting, addiction, severe withdrawal, heart arrhythmias, respiratory depression, seizures, drug-drug interactions, overdose, and death.[4]

43. According to recent research, kratom is sixty-three (63) times more deadly than other natural products that are sold to American consumers.[5]

44. Unable to verify kratom's safety, the kratom industry has instead been built upon clandestine and fraudulent business activities, including the unlawful importation of kratom as "plant food," "incense," "cosmetic" powders, and other legal items.

---

[4] See e.g. *See* FDA Import Alert # 54-15 (https://www.accessdata.fda.gov/cms_ia/importalert_1137.html) (last accessed January 7, 2025); *see also*, FDA Statement, advisory about deadly risks associated with kratom (https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-fda-advisory-about-deadly-risks-associated-kratom) (last accessed January 7, 2025); *See also, e.g.,* Xiaotong Li, et al., *An evaluation of adverse drug reactions and outcomes attributed to kratom in the US Food and Drug Administration Adverse Event Reporting System from January 2004 through September 2021* (Clinical and Translational Science, 00:1-10; 2023); Mori J. Krantz, et al, *Ventricular Arrhythmias Associated With Over-the-Counter and Recreational Opioids* (Journal of American College of Cardiology, Vol. 81, No. 23, 2023); Donna Papsun, *Forensic Implications of Kratom: Kratom Toxicity, Correlation with Mitragynine Concentrations, and Polypharmacy* (Current Addiction Reports; published online May 19, 2023)

[5] Xiaotong Li, et al., *An evaluation of adverse drug reactions and outcomes attributed to kratom in the US Food and Drug Administration Adverse Event Reporting System from January 2004 through September 2021* (Clinical and Translational Science, 00:1-10; 2023).

14

45.     All Defendants were aware that kratom was not cleared by the FDA for human consumption. Nevertheless, each Defendant sold kratom and represented it as being available for human consumption by marketing and distributing it as an all-natural and safe supplement.

46.     All Defendants knew or should have known that kratom was unsafe and did not take the steps to warn consumers, including Amandus Harrison, of its dangers.

47.     All Defendants knew that the consumption of kratom caused addiction and death.

48.     Various Defendants are parties to a wrongful death action in the Eastern District of Louisiana, filed by Plaintiff, Kathleen Moller, alleging that her daughter died after consuming O.P.M.S. Kratom.[6]

49.     Various Defendants are parties to a wrongful death action in Dallas County, Texas, filed by Plaintiff, Dusti Young, alleging that her brother died after consuming Whole Herbs Kratom, another kratom brand that is imported, packaged, distributed, and sold by Defendants.[7]

50.     Various Defendants are parties to a wrongful death lawsuit in Cowlitz County, Washington, filed by Plaintiff, Rachel McKibban, alleging that her son died after consuming Whole Herbs Kratom, another kratom brand that is imported, packaged, distributed, and sold by Defendants.[8]

---

[6] *See Kathleen Moller v. Martian Sales, Inc. et. al.,* case no.: 2:24-cv-002228, filed in the United States District Court Eastern District of Louisiana.
[7] *See* Dusti Young as Anticipated Representative of the *Estate of Dustin Hernandez, deceased and Brenda Sandovalv. "OPMS Wholesale" et. al.,* case no.: CC-23-01707-C, filed in the County Court of Dallas County, Texas.
[8] *See* Rachel McKibban, individually and as Personal Representative of the *Estate of Jordan McKibban v. JoPen, LLC et. al.,* case no.: 23-01183-08, filed in the Superior Court of the State Washington in and for Cowlitz County.

51.     Defendants are named parties in several other wrongful death actions filed in the United States, where plaintiffs have alleged that the Defendants' kratom products resulted in the sudden death of their loved one.

52.     Defendant, OLISTICA is prominent in the kratom industry, as it is behind some of the most popular kratom brands on the market.

53.     Olistica is involved with the following kratom brands: O.P.M.S. (the product at issue), Whole Herbs, and Remarkable Herbs.

54.     Those behind OLISTICA, including Defendants, are named parties in multiple lawsuits across the country for the harm caused by their misconduct and their kratom products.[9]

55.     Defendants rely on an evolving web of undercapitalized shell entities and fictitious business names to avoid responsibility for deaths and injury caused by their kratom products.

56.     One key player in OLISTICA's corporate structure is Peyton Shea Palaio.

57.     Mr. Palaio was the CEO of Defendant OLISTICA and considered the ringleader of the O.P.M.S. brand.

58.     Mark Jennings and Mark Reilly, President of MARTIAN SALES, are known to work in conjunction with Mr. Palaio in the importation, manufacturing, marketing, testing, distribution, and sale of kratom products to consumers, including Amandus Harrison.

59.     For years, federal agencies (and courts) have attempted to protect the public by seizing kratom and taking other enforcement actions against kratom importers, distributors, and

---

[9] *See, e.g.,* Hannah Critchfield, *A major US kratom brand relies on a maze of companies. Here's the list*, TAMPA BAY TIMES (Dec. 19, 2023) (https://www.tampabay.com/investigations/2023/12/19/major-us-kratom-brand-relies-maze-companies-heres-list/ ); Hannah Critchfield, Helen Freund and Langston Taylor, *DEADLY DOSE PART 3:*

those who illegally sell kratom as an unapproved treatment for medical conditions such as chronic pain, anxiety, addiction, or opioid withdrawals. [10]

60.    Despite these efforts, the industry, including Defendants, is successfully smuggling billions of dollars' worth of kratom across the U.S. border. Once it gets past customs and border officials, the kratom is quickly channeled into chains of distribution managed by individuals and entities, including Defendants, generating huge profits from millions of consumers. Despite the serious risks of kratom use, profit-seeking companies continue to market kratom products with unproven and deceptive claims about its safety and ability to cure, treat, or prevent medical conditions. The FDA's examples of illegal claims include statements such as: "many people use kratom to overcome opiate addiction," and kratom is frequently used "as a natural alternative" to treat various health conditions, replacing opiate prescriptions. [11]

61.    Because kratom is adulterated, many kratom businesses, including Defendants, conceal their identities and activities behind mysterious and evolving shell companies, and misleading labels.

62.    All Defendants have profited from unfair and deceptive business practices by importing, manufacturing, promoting, distributing, and/or selling dangerous kratom products to Tennessee residents, including Amandus Harrison.

---

*Kratom's path across the US is marked by deception and secrets,* TAMPA BAY TIMES (December 17, 2023 (https://project.tampabay.com/investigations/deadly-dose/kratom-industry-opms-supply-chain-indonesia-florida/ ).
[10] *See* Seizures and Injunctions – Health Fraud ( https://wwwfda.gov/consumers/health-fraud-scams/seizures-and-injunctions-health-fraud ) (last accessed January 15, 2025); FDA Statement, Advisory about deadly risks associated with kratom (https://wwwfda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-fda-advisory-about-deadly-risks-associated-kratom ) (last accessed January 15, 2025).

**FIRST CLAIM FOR RELIEF**
**(Wrongful Death/Negligence – Against All Defendants)**

63. Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above as if fully stated herein.

64. Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of Amandus Harrison, Decedent, brings this Wrongful Death Action pursuant to Tenn. Code Ann. §§ 20-5-101 through 20-5-117 (referred to hereafter as "Tennessee's Wrongful Death Statute").

65. Each Defendant imported, designed, manufactured, tested, marketed, distributed, and/or sold the Kratom Products that killed Amandus Harrison.

66. Defendants were negligent and careless regarding the importation, design, manufacturing, testing, marketing, distribution, and/or sale of Kratom Products.

67. Defendants had a duty to exercise reasonable care in the importation, design, manufacturing, testing, marketing, distribution, and/or sale of Kratom Products.

68. Defendants failed to exercise reasonable care in the importation, design, manufacturing, testing, marketing, distribution, and/or sale of Kratom Products.

69. Defendants were further negligent in that their Kratom Products failed to provide proper warnings and instructions for use.

70. Defendants knew or should have known that the improperly imported Kratom Products were unreasonably dangerous for human consumption and especially for medicinal uses, including the alleviation of chronic pain.

---

[11] *See* FDA News Release, FDA issues warnings to companies selling illegal, unapproved kratom drug products (https://wwwfda.gov/news-events/press-announcements/fda-issues-warnings-companies-selling-illegal-unapproved-

71.     Defendants knew or should have known that they were unlawfully selling the products to customers for medicinal purposes, even though the products had unreasonable health risks that were not properly understood, identified, disclosed, approved, or regulated.

72.     Defendants knew or should have known that consumers, like Amandus Harrison, would suffer foreseeable injury, including death, as a result of Defendants' failure to exercise ordinary care as set forth above.

73.     The death of Plaintiff's Decedent, Amandus Harrison was a direct and proximate result of the negligence, carelessness, and recklessness of all Defendants as described further below.

74.     Defendants wrongful conduct constitutes prima facie evidence of negligence and/or negligence *per se* and was the proximate cause of the untimely passing of Amandus Harrison the resulting harm to Mrs. Harrison's property and person, for which his estate is entitled to damages.

75.     For instance, kratom, including O.P.M.S. kratom is a New Dietary Ingredient (NDI) for purposes of the Dietary Supplement Health and Education Act of 1994 (DSHEA). The FDA has established that kratom is an NDI.[12] Nonetheless, Defendants have sold O.P.M.S. kratom without first completing the required new dietary ingredient notification. O.P.M.S. is also sold as "misbranded," "drugs" and/or "new drugs" under the Food Drug and Cosmetic Act. See e.g. 21 USC § 321(n), (p), & (ff), 21 USC § 350b(d), and 21 USC 342(f)(1)(B). Finally, O.P.M.S. Black is not "natural kratom" as defined in T.C.A. § 39-17-452.

---

kratom-drug-products-marketed-opioid) (last accessed January 15, 2025).

[12] See FDA Import Alert 45-15, at https://www.accessdata.fda.gov/cms_ia/importalert_1137.html (last accessed January 7, 2025).

76.     Mrs. Harrison is survived by five (5) adult children and one (1) minor child, all of whom are entitled to recover damages from Defendants under Tennessee's Wrongful Death Statute.

77.     As a direct and proximate result of the wrongful conduct set forth above, Plaintiff and the wrongful death beneficiaries of Amandus Harrison, deceased, have suffered the loss of support, love, affection, comfort, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, and other benefits inherent in family relationships, for all of which damages are claimed.

78.     Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered mental anguish, grief, torment, and distress as a result of Decedent's death, as well as mental anguish caused by the circumstances leading to his death for which they are entitled to damages.

79.     Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered pecuniary losses and damages, including but not limited to medical, funeral and burial expenses, and will continue to incur such losses and expenses into the future, for which Defendants are directly liable.

WHEREFORE, Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of Amandus Harrison, deceased, prays for judgment against Defendants, jointly and severally, individually and/or collectively, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, and such other and further relief as this Honorable Court deems just and equitable.

## SECOND CLAIM FOR RELIEF

### (Wrongful Death/Failure to Warn – Against All Defendants)

80.     Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above as if fully stated herein.

81.     Each named Defendant imported, designed, manufactured, tested, marketed, distributed, and/or sold the Kratom Products that killed Amandus Harrison.

82.     At all relevant times, Defendants were conducting substantial business within the State of Tennessee and Green County.

83.     The Kratom Products was expected to and did reach Amandus Harrison without substantial change in its condition when it left Defendants' hands.

84.     At the time the Kratom Products were sold by Defendants, they were in a defective condition because of their unsafe and improper design, unsafe levels of Mitragynine, and/or lack of proper warnings.

85.     The Defendants' Kratom Products were continuously sold without adequate warnings or adequate instructions regarding the product's adulterated status, serious health risks, including the risks of abuse, dependence, addiction, overdose, and death.[13]

86.     An ordinary consumer would reasonably conclude that Defendants' Kratom Products are not reasonably safe when sold without adequate warnings or instructions about the serious adverse health risks, including the risk of overdose and death suffered by Amandus Harrison.

---

[13] *See* FDA News Release, FDA issues warnings to companies selling illegal, unapproved kratom drug products (https://www.fda.gov/news-events/press-announcements/fda-issues-warnings-companies-selling-illegal-unapproved-kratom-drug-products-marketed-opioid) (last accessed January 7, 2025); DOJ DEA Drug Fact Sheet – Kratom (https://www.dea.gov/sites/default/files/2020-06/Kratom-2020_0.pdf) (last accessed January 7, 2025).

87.     In addition, at the time of manufacturing, the likelihood that Defendants' Kratom Products would cause and contribute to the serious harms inflicted on Amandus Harrison (including toxicity and death) rendered Defendants' kratom warnings and instructions completely inadequate, even though reasonable instructions and warnings about the risk of those serious harms could easily have been provided.

88.     At the times and on the occasions in question, Amandus Harrison was using the Defendants' Kratom Products for the very purposes intended and promoted by the Defendants, including: (a) human consumption and (b) relief from pain.

89.     Without adequate warnings and instructions, the Kratom Products were unreasonably dangerous, unfit for its intended use, and defective.

90.     If the Kratom Products had been sold with adequate warnings and instructions regarding its adulterated status and the undisclosed health risks, including but not limited to adequate disclosure of the major risks of overdose and death, then Amandus Harrison's overdose and death from the Kratom Products would not have occurred.

91.     Defendants are liable for all damages caused by their failures to provide adequate warnings and instructions that would have prevented the death caused by their defective and unreasonably dangerous nature of their Products.

92.     The death of Plaintiff's Decedent, Amandus Harrison was a direct and proximate result of the lack of reasonable and adequate instructions or warnings regarding the defects in the Defendants' kratom.

93.     Mrs. Harrison is survived by five (5) adult children and one (1) minor child, all of whom are entitled to recover damages from Defendants under Tennessee's Wrongful Death Statute.

94.     As a direct and proximate result of the wrongful conduct set forth above, Plaintiff and the wrongful death beneficiaries of Amandus Harrison, deceased, have suffered the loss of support, love, affection, comfort, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, and other benefits inherent in family relationships, for all of which damages are claimed.

95.     Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered mental anguish, grief, torment, and distress as a result of Decedent's death, as well as mental anguish caused by the circumstances leading to his death for which they are entitled to damages.

96.     Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered pecuniary losses and damages, including but not limited to medical, funeral and burial expenses, and will continue to incur such losses and expenses into the future, for which the Defendants are directly liable.

WHEREFORE, Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of Amandus Harrison, deceased, prays for judgment against Defendants, jointly and severally, individually and/or collectively, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, and such other and further relief as this Honorable Court deems just and equitable.

## **THIRD CLAIM FOR RELIEF**

### **(Wrongful Death/Strict Liability Manufacturing & Design Defect – Against All Defendants)**

97.     Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above as if fully stated herein.

98.     At the time Defendants imported or manufactured the products sold to and consumed by Amandus Harrison, the products were not reasonably safe as designed.

99.     The Kratom Products were and are far more dangerous than the ordinary consumer would reasonably expect, considering relevant factors, such as the product's intrinsic nature, relative cost, severity of potential harm (including death), the industry standards governing natural products, and the cost and feasibility of minimizing such risk.

100.    The Defendants are unable to adequately assure that the manufacturing process for their Kratom Products can achieve a product that is reasonably safe for human consumption.

101.    At the time the Kratom Products were sold by Defendants, they were in a defective condition because of their unsafe and improper design.

102.    The products sold to Amandus Harrison were unreasonably dangerous beyond the expectations of the ordinary consumer and were unfit for their intended use.

103.    The products sold to Amandus Harrison were unsafe for normal or anticipatable handling and consumption.

104.    The Defendants knew or should have known about the dangerous condition of these products and a reasonable manufacturer or seller would not have put these products on the market.

105. At the time and on the occasions in question, Amandus Harrison was using the Defendants' products for the foreseeable purposes that Defendants knew of and intended, and were in this respect defective, unsafe and unreasonably dangerous.

106. The death of Plaintiff's Decedent, Amandus, Harrison was a direct and proximate result of the defective, unsafe, and unreasonably dangerous condition of the Kratom Products resulted in the death of Amandus Harrison.

107. As a direct and proximate result of the defects in the Defendants' products, Plaintiff Christopher Harrison and Amandus's other wrongful death beneficiaries suffered and will continue to suffer economic and non-economic injuries, damages, and losses.

108. The death of Plaintiff's Decedent, Amandus Harrison was a direct and proximate result of the lack of the defective design and manufacture of the Defendants' kratom.

109. Mrs. Harrison is survived by five (5) adult children and one (1) minor child, all of whom are entitled to recover damages from Defendants under Tennessee's Wrongful Death Statute.

110. As a direct and proximate result of the wrongful conduct set forth above, Plaintiff and the wrongful death beneficiaries of Amandus Harrison, deceased, have suffered the loss of support, love, affection, comfort, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, and other benefits inherent in family relationships, for all of which damages are claimed.

111. Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered mental anguish, grief, torment, and distress as a result of Decedent's death, as well

as mental anguish caused by the circumstances leading to his death for which they are entitled to damages.

112.    Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered pecuniary losses and damages, including but not limited to medical, funeral and burial expenses, and will continue to incur such losses and expenses into the future, for which the Defendants are directly liable.

WHEREFORE, Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of Amandus Harrison, deceased, prays for judgment against Defendants, jointly and severally, individually and/or collectively, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, and such other and further relief as this Honorable Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF

### (Wrongful Death/Breach of Warranty – Against All Defendants)

113.    Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above as if fully stated herein.

114.    Defendants imported, manufactured, tested, marketed, distributed and/or sold into the stream of commerce O.P.M.S. Kratom Products.

115.    Defendants expressly warranted that their Products were reasonably fit for their intended purposes of human consumption as an all-natural, safe, and effective product.

116.    The Kratom Products were not as warranted by Defendants.

117.    Amandus Harrison was an individual who was reasonably expected to use, consume, and/or be affected by the Kratom Products.

118.    Within a reasonable time after Plaintiff discovered or should have discovered the breach of warranty, Plaintiff notified Defendants of the breach.

119.    The death of Plaintiff's Decedent, Amandus Harrison was a direct and proximate result of Defendants' breach of express warranties regarding the effectiveness and safety of O.P.M.S. Kratom Products.

120.    Mrs. Harrison is survived by five (5) adult children and one (1) minor child, all of whom are entitled to recover damages from Defendants under Tennessee's Wrongful Death Statute.

121.    As a direct and proximate result of the wrongful conduct set forth above, Plaintiff and the wrongful death beneficiaries of Amandus Harrison, deceased, have suffered the loss of support, love, affection, comfort, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, and other benefits inherent in family relationships, for all of which damages are claimed.

122.    Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered mental anguish, grief, torment, and distress as a result of Decedent's death, as well as mental anguish caused by the circumstances leading to his death for which they are entitled to damages.

123.    Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered pecuniary losses and damages, including but not limited to medical, funeral and burial expenses, and will continue to incur such losses and expenses into the future, for which the Defendants are directly liable.

WHEREFORE, Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of Amandus Harrison, deceased, prays for judgment against Defendants, jointly and severally, individually and/or collectively, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, and such other and further relief as this Honorable Court deems just and equitable.

## FIFTH CLAIM FOR RELIEF

### (Wrongful Death/Breach of Implied Warranty – Against All Defendants)

124.    Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above as if fully stated herein.

125.    Defendants imported, manufactured, tested, marketed, distributed and/or sold into the stream of commerce O.P.M.S. Kratom Products.

126.    By placing Kratom Products into the stream of commerce, Defendants impliedly warranted that their Products were reasonably fit for their intended purposes of human consumption, improving health and wellbeing, and as a safe and effective product for medical purposes such as pain relief.

127.    Amandus Harrison was an individual who was reasonably expected to use, consume, and/or be affected by the Kratom Products.

128.    All Defendants were merchants with respect to the O.P.M.S. Kratom Product that killed Amandus Harrison.

129.    The Kratom Products placed into the stream of commerce by Defendants were defective and accordingly, not fit, safe, or merchantable for their intended use.

130.    Within a reasonable time after Plaintiff discovered or should have discovered the breach of warranty, Plaintiff notified Defendants of the breach.

131.    The death of Plaintiff's Decedent, Amandus Harrison was a direct and proximate result of Defendants' breach of implied warranties regarding the effectiveness and safety of O.P.M.S. Kratom Products.

132.    As a direct and proximate result of Defendants' breach, Plaintiff Christopher Harrison and Amandus's other wrongful death beneficiaries suffered and will continue to suffer economic and non-economic injuries, damages, and losses.

133.    Mrs. Harrison is survived by five (5) adult children and one (1) minor child, all of whom are entitled to recover damages from Defendants under Tennessee's Wrongful Death Statute.

134.    As a direct and proximate result of the wrongful conduct set forth above, Plaintiff and the wrongful death beneficiaries of Amandus Harrison, deceased, have suffered the loss of support, love, affection, comfort, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, and other benefits inherent in family relationships, for all of which damages are claimed.

135.    Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered mental anguish, grief, torment, and distress as a result of Decedent's death, as well as mental anguish caused by the circumstances leading to his death for which they are entitled to damages.

136.    Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered pecuniary losses and damages, including but not limited to medical, funeral and

burial expenses, and will continue to incur such losses and expenses into the future, for which Defendants are directly liable.

WHEREFORE, Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of Amandus Harrison, deceased, prays for judgment against Defendants, jointly and severally, individually and/or collectively, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, and such other and further relief as this Honorable Court deems just and equitable.

## SIXTH CLAIM FOR RELIEF

### (Wrongful Death/Negligent Misrepresentation - Against All Defendants)

137. Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above as if fully stated herein.

138. Defendants made misrepresentations of material facts about the Kratom Product and concealed information about the product to the public, including Amandus Harrison.

139. Defendants possessed superior knowledge about the lack of clinical testing and safety of its products, including the lack of reliable support for representations about the asserted clinical and medicinal safety of the product, and the absence of deaths caused by Kratom Products.

140. Defendants failed in their duty to disclose known material facts to Plaintiff regarding their products, including but not limited to:

    a. The health risks associated with regular consumption of kratom products.

    b. Information regarding adverse events associated with kratom products.

    c. The risk of overdose and death associated with kratom products.

141. Additional misrepresentations and concealment included, but were not limited to:

    a. Falsely representing that the product will not cause death.

    b. Falsely representing that the product is safe and appropriate for regular human consumption.

    c. Falsely representing that every batch of kratom product was lab tested for quality and purity.

    d. Falsely representing that the product is never adulterated.

    e. Falsely representing that the product has no serious adverse health effects.

142. The above representations and omissions were material and were made with the intent to persuade and induce Amandus Harrison to choose and regularly use the O.P.M.S. Kratom Products.

143. Defendants made the above representations or omissions knowing the misrepresentations were false or were ignorant of the truth of the assertions.

144. The above representations and omissions are reflected in Defendants' system for marketing their products. Together, all these Defendants unlawfully promoted and held out for sale the unreasonably dangerous product for medicinal purposes to Tennessee residents.

145. Defendants made the above misrepresentations or omissions with the intention and knowledge that Tennessee consumers would select the product for regular consumption for the purposes identified in their marketing.

146. Amandus Harrison relied upon and was induced to act in reliance on these Defendants' misrepresentations and omissions when he in fact purchased the product to achieve relief from chronic pain.

31

147. The death of Plaintiff's Decedent, Amandus Harrison was a direct and proximate result of Defendants' negligence misrepresentations and omissions related to O.P.M.S. kratom and kratom write large.

148. As a direct and proximate result of Defendants' breach, Plaintiff Christopher Harrison and Amandus's other wrongful death beneficiaries suffered and will continue to suffer economic and non-economic injuries, damages, and losses.

149. Mrs. Harrison is survived by five (5) adult children and one (1) minor child, all of whom are entitled to recover damages from Defendants under Tennessee's Wrongful Death Statute.

150. As a direct and proximate result of the wrongful conduct set forth above, Plaintiff and the wrongful death beneficiaries of Amandus Harrison, deceased, have suffered the loss of support, love, affection, comfort, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, and other benefits inherent in family relationships, for all of which damages are claimed.

151. Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered mental anguish, grief, torment, and distress as a result of Decedent's death, as well as mental anguish caused by the circumstances leading to his death for which they are entitled to damages.

152. Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered pecuniary losses and damages, including but not limited to medical, funeral and burial expenses, and will continue to incur such losses and expenses into the future, for which Defendants are directly liable.

WHEREFORE, Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of Amandus Harrison, deceased, prays for judgment against Defendants, jointly and severally, individually and/or collectively, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, and such other and further relief as this Honorable Court deems just and equitable.

## SEVENTH CLAIM FOR RELIEF

### (Wrongful Death/Consumer Protection Act Violations –
### Against All Defendants)

153. Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above as if fully stated herein.

154. The actions of the Defendants, as alleged throughout this Complaint, violated Tenn. Code Ann, § 47-18-101 *et al*, otherwise known as the Tennessee Consumer Protection Act of 1977 (hereinafter "TCPA").

155. The acts by Defendants in this cause of action include violations of the following subsections of Tenn. Code Ann. § 47-18-104:

    a. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. Tenn. Code Ann. § 47-18-104(b)(2).

    b. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have. Tenn. Code Ann. § 47-18-104(b)(5).

156. Such acts occurred in the course of trade or commerce in the State of Tennessee.

157. Such acts affected, and still affect, the public as actual or potential consumers of Defendants' Kratom Products in the Tennessee.

158. Amandus Harrison, deceased, was an actual consumer of Defendants' Kratom Products.

159. The death of Plaintiff's Decedent, Amandus Harrison was a direct and proximate result of Defendants' deceptive and unfair trade practices.

160. As a direct and proximate result of Defendants' breach, Plaintiff Christopher Harrison and Amandus's other wrongful death beneficiaries suffered and will continue to suffer economic and non-economic injuries, damages, and losses.

161. As the Defendants violated the TCPA in the above-enumerated ways, the Plaintiff is entitled to treble damages and attorney fees as provided for in Tenn. Code Ann. § 47-18-109.

162. Mrs. Harrison is survived by five (5) adult children and one (1) minor child, all of whom are entitled to recover damages from Defendants under Tennessee's Wrongful Death Statute.

163. As a direct and proximate result of the wrongful conduct set forth above, Plaintiff and the wrongful death beneficiaries of Amandus Harrison, deceased, have suffered the loss of support, love, affection, comfort, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, and other benefits inherent in family relationships, for all of which damages are claimed.

164. Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered mental anguish, grief, torment, and distress as a result of Decedent's death, as well

as mental anguish caused by the circumstances leading to his death for which they are entitled to damages.

165.     Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered pecuniary losses and damages, including but not limited to medical, funeral and burial expenses, and will continue to incur such losses and expenses into the future, for which Defendants are directly liable.

WHEREFORE, Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of Amandus Harrison, deceased, prays for judgment against Defendants, jointly and severally, individually and/or collectively, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, and such other and further relief as this Honorable Court deems just and equitable.

## EIGHTH CLAIM FOR RELIEF

### (Wrongful Death/Civil Conspiracy– Against All Defendants)

166.     Plaintiff re-alleges and incorporates by reference paragraphs 1-62 above as if fully stated herein.

167.     The Defendants had a meeting of the minds and knowingly and willfully conspired and agreed to a common design to fraudulently create each entity behind the O.P.M.S. brand for the purpose of smuggling kratom products across the U.S. border to be sold for human consumption, concealing their misconduct through documentation that falsely identified kratom products as, "florafood," "soil container," "neem leaf," and/or other products labeled as "not for human consumption".

168. The Defendants further conspired to sell their kratom products to consumers without any adequate warnings regarding kratom's dangers.

169. The Defendants conspired to unlawfully import, distribute, market, and sell their kratom products to consumers with one goal in mind, financial gain.

170. Defendants committed and caused to be committed the overt and unlawful acts in furtherance of the conspiracy, including but not limited to the actions described above.

171. The death of Plaintiff's Decedent, Amandus Harrison was a direct and proximate result of Defendant's civil conspiracy.

172. As a direct and proximate result of Defendants' breach, Plaintiff Christopher Harrison and Amandus's other wrongful death beneficiaries suffered and will continue to suffer economic and non-economic injuries, damages, and losses.

173. Mrs. Harrison is survived by five (5) adult children and one (1) minor child, all of whom are entitled to recover damages from Defendants under Tennessee's Wrongful Death Statute.

174. As a direct and proximate result of the wrongful conduct set forth above, Plaintiff and the wrongful death beneficiaries of Amandus Harrison, deceased, have suffered the loss of support, love, affection, comfort, services, society, companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, and other benefits inherent in family relationships, for all of which damages are claimed.

175. Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered mental anguish, grief, torment, and distress as a result of Decedent's death, as well

as mental anguish caused by the circumstances leading to his death for which they are entitled to damages.

176. Plaintiff and the survivors and next of kin of Amandus Harrison, deceased, have also suffered pecuniary losses and damages, including but not limited to medical, funeral and burial expenses, and will continue to incur such losses and expenses into the future, for which Defendants are directly liable.

WHEREFORE, Plaintiff Christopher Harrison, Individually and on behalf of the surviving children of Amandus Harrison, deceased, prays for judgment against Defendants, jointly and severally, individually and/or collectively, for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), together with interest, costs, and such other and further relief as this Honorable Court deems just and equitable.

## PUNITIVE DAMAGES AND AD DAMNUM

177. In addition, the acts and omissions as set forth above against the Defendants demonstrate that they acted with actual malice and/or gross negligence that evinces a willful, wanton or reckless disregard for the safety of others or that each committed actual fraud and thus warrants the imposition of punitive damages in this case in an amount to be set by a jury necessary to punish or deter the Defendants and others and considering all reasonable factors under applicable Tennessee law.

178. In light of the foregoing, and as a direct and proximate result of the Defendants' conduct, acts and/or omissions, Amandus Harrison, our decedent, suffered severe injuries which led to her death. Plaintiff has additionally suffered substantial damages for which recovery is provided pursuant to the wrongful death statute, Tenn. Code Ann. § 20-5-113, including but not

limited to filial loss of consortium; loss of enjoyment of life; loss of filial love and attention of our decedent; loss of future earning capacity; and the decedent's pre-death pain and suffering. Additionally, the Plaintiff has incurred funeral and burial expenses, and Plaintiff therefore, as required by law, seeks a judgment against Defendants in an amount to be determined by the jury, but not to exceed ten million dollars ($10,000,000.00).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief against Defendants as to all counts as follows:

1. That proper service be issued and served upon Defendants;

2. That a trial by jury be had on all issues;

3. That Plaintiff recovers a judgment for compensatory damages against Defendants;

4. That Plaintiff recovers a judgment for punitive damages against the Defendants;

5. That Plaintiff recover reasonable costs and expenses; and

6. That Plaintiff has and receives any other further relief to which she may show herself to be justly entitled.

Respectfully submitted,

By: *s/ Daniel V. Parish*
Daniel V. Parish (TN Bar #27452)
Parish Law, LLC
1779 Kirby Parkway, #1-68
Memphis, TN 38138
901-424-5585
dparish@parishlawllc.com

Michael Cowgill
*PHV Motion Forthcoming*
**mctlaw**
1515 Ringling Blvd., Suite 700
Sarasota, FL 34236

888-952-5242
mcowgill@mctlaw.com

*Attorneys for Plaintiffs*