UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| CHRISTOPHER HARRISON, individually, and as lead plaintiff on behalf of the surviving children of AMANDUS HARRISON, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>JOPEN, LLC, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 2:25-CV-00030-DCLC-CRW<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a sua sponte review of the record. Last year, Amandus Harrison, the late wife of Plaintiff Christopher Harrison and mother of six children, allegedly died after she consumed O.P.M.S. Black Liquid Kratom Extract Shots, which she had bought from a tobacco shop in Greeneville, Tennessee. [Compl., Doc. 1, ¶¶ 23–25]. According to Mr. Harrison, kratom is a botanical product "derived from the leaves of the Mitragyna Speciosa tree, which grows natively in Southeast Asia." [*Id.* ¶ 33]. He describes it as "highly dangerous" and "not cleared by the FDA for human consumption." [*Id.* ¶¶ 20, 45]. In fact, the FDA has warned consumers not to use kratom, citing "reports of serious adverse events." [*Id.* ¶ 24 & ¶ 24 n.3].

Despite the alleged risks that it poses to consumers, Mr. Harrison claims that various companies "generat[e] huge profits" from selling and marketing it as a safe product that can "cure, treat, or prevent medical conditions," [*id.* ¶¶ 45, 60], and having full knowledge of its dangers, these companies conceal their identities through "a web of affiliates, shell companies, alter egos, business names, assumed names, and/or trade names," [*id.* ¶ 18]. Mr. Harrison now

brings suit in this Court against these companies, their alleged corporate aliases, and their associates for wrongful death under Tennessee law, [*id.* at 18–37], claiming that they imported, manufactured, distributed, and sold the kratom that allegedly killed his wife, [*id.* at 20].

Mr. Harrison invokes 28 U.S.C. § 1332 as the basis for the Court's federal jurisdiction over this action, alleging that "[t]here is complete diversity of the parties." [*Id.* ¶¶ 4, 6–9, 11–17]. Under § 1332(a), diversity jurisdiction requires complete diversity between every plaintiff and every defendant. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (stating that diversity jurisdiction "exists only when no plaintiff and no defendant are citizens of the same state" (citation omitted)). "A plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction," and to meet this burden in a diversity action, he must "state all parties' citizenships such that the existence of complete diversity can be confirmed." *Vaughn v. Holiday Inn Cleveland Coliseum*, 56 F. App'x 249, 250 (6th Cir. 2003) (citation and quotation omitted)). If he fails to do so, he "face[s] dismissal." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) (citation and footnote omitted).

In attempting to meet this burden, Mr. Harrison—who alleges that he is a citizen of Tennessee—recites the following facts as to the citizenships of each defendant:

- JOpen, LLC, a limited liability company with a sole member who is a citizen of Texas;
- Martian Sales, Inc., a corporation that is incorporated in Wyoming and has its principal place of business in Wyoming;
- Johnson Foods, LLC, a limited liability company with a sole member who is a citizen of Georgia;

2

- LP Ind. Inc., a corporation that is incorporated in Wyoming and has its principal place of business in Wyoming;

- Nuza, LLC, a limited liability company with a sole member who is a citizen of Georgia;

- Calibre Manufacturing, LLC, a limited liability company with a sole member who is a citizen of Georgia;

- Olistica Life Sciences Group, an unincorporated association;

- FMK Group, Inc., a corporation that is incorporated in Wyoming and has its principal place of business in Wyoming;

- PNW Holdings, LLC, a limited liability company with a sole member who is a citizen of Georgia;

- CC US Holdings, LLC, a limited liability company with a sole member who is a citizen of Georgia;

- Peyton Shea Palaio, a citizen of Georgia;

- Mark Jennings, a citizen of Georgia;

- Eyal David Gabbay, a citizen of Texas; and

- Mark Daniel James Reilly, a citizen of Georgia.

[*Id.* ¶¶ 4–17].

The focal point of the Court's analysis is Defendant Olistica Life Sciences Group. Mr. Harrison pleads that Olistica is "prominent in the kratom industry" and is "involved with" O.P.M.S, the product that allegedly killed his wife. [Compl. ¶¶ 52–53]. He also pleads that the other defendants in this actions are "behind Olistica." [*Id.* ¶ 54]. Olistica, then, seemingly

3

operates as a parent or umbrella company over the other defendants and plays a central, if not indispensable, part in this action.

Although Mr. Harrison claims that Olistica is an unincorporated association, he does not allege the citizenship of any of its members. "[A]n unincorporated association . . . has no separate legal identity so its citizenship, at least for the purposes of diversity jurisdiction, is the citizenship of each of its members." *Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990); *United Steelworkers of Am., AFL-CIO v. R.H. Bouligny, Inc.*, 382 U.S. 145, 146 (1965); *Chapman v. Barney*, 129 U.S. 677, 682 (1889))). At first blush, Mr. Harrison's failure to allege the citizenship of Olistica's members would appear to be a defect in his pleading—one that he could ostensibly cure by amending it. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial . . . courts."). But Olistica, in filing its disclosure statement under Federal Rule of Civil Procedure 7.1, represents that it "d[oes] not have officers, shareholders, or members." [Pl.'s Disclosure Statement, Doc. 70, at 2].

Mr. Harrison's pleading and Olistica's disclosure statement demonstrate that Olistica is effectively stateless. *See Woods v. Hancock Whitney Bank*, No. 22-546, 2022 WL 1683425, at *2 (E.D. La. May 26, 2022) ("Because the citizenship of a limited liability company is the citizenship of its members at the time of filing, a company that has no members at that time is effectively stateless." (quotation omitted)); *E&T Skyline Constr., LLC v. Talisman Cas. Ins. Co., LLC*, No. 19-CV-08069 (AT)(SN), 2020 WL 6531108, at *4 (S.D.N.Y. July 30, 2020) ("In the unusual case where a limited liability company has no members, it may be considered 'stateless' for the purpose of citizenship[.]" (citations omitted)); *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, 397 F. Supp. 3d 749, 751–52 (E.D. Pa. 2019) ("The case law

4

discussing the unusual situation of citizenship of an LLC without members is sparse," but if an LLC "is deemed to have no members, it is then stateless."); *Lehmann v. Davidson Hotel Co., LLC*, No. 4:15-CV-319 CAS, 2015 WL 867799, at *3 (E.D. Mo. Feb. 27, 2015) ("[T]he Court concludes defendant . . . is effectively rendered 'stateless' for purposes of federal diversity jurisdiction because its sole member has no members."); *ConnectU LLC v. Zuckerberg*, 482 F. Supp. 2d 3, 27 (D. Mass. 2007) ("Given that an LLC is a citizen of the state or states of which its members are citizens, having no members effectively rendered [the plaintiff] stateless when the complaint was filed."), *rev'd on other grounds*, 552 F.3d 82 (1st Cir. 2008).

"As a stateless" unincorporated association, Olistica "cannot sue or be sued in federal court on the basis of diversity jurisdiction," *Alkuda v. McDonald Hopkins Co., LPA*, No. 25-3217, 2025 WL 2639343, at *1 (6th Cir. Sept. 9, 2025) (citing *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990)), because "[t]he addition of a non-diverse party," like Olistica, "*typically* destroys diversity jurisdiction, requiring the case's dismissal," *Royal Canin USA, Inc. v. Wullschleger*, 604 U.S. 22, 37 (2025) (emphasis added) (citation omitted); *see Alkuda*, No. 25-3217, 2025 WL 2639343 at *2 (remanding the case and ordering the district court to dismiss it for lack of subject-matter jurisdiction because the complaint showed that the plaintiff "is not a citizen of any state"); *Eagle TX I SPE, LLC v. Sharif & Munir Enters., Inc.*, 602 F. App'x 576, 578 (5th Cir. 2015) (describing a "'stateless' entity" as "diversity-destroying"). The Court italicizes the word "typically" because two "exceptions" exist to a stateless entity's fatal effect on diversity jurisdiction. *Newman-Green*, 490 U.S. at 830.

The first exception is 28 U.S.C. § 1653, which states that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial . . . courts." This statute, though, only "allows parties to fix 'incorrect statements about jurisdiction that actually exists'" and "not

5

defects in the jurisdictional facts themselves,'" *Prime Rate Premium Fin. Corp. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019) (quoting *Newman-Green*, 490 U.S. at 831), and because Olistica, in its disclosure statement, represents that it has no members, Mr. Harrison's failure to plead the citizenship of Olistica's members reads as a defect in the jurisdictional facts themselves rather than one that he can rectify with an amended pleading. Section 1653 therefore cannot avail Mr. Harrison in establishing diversity jurisdiction.

That leaves the second, and final, exception: Federal Rule of Civil Procedure 21. Under Rule 21, which "invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time," *Newman-Green*, 490 U.S. at 832 (footnote omitted), the Court has license to salvage diversity jurisdiction by "dismiss[ing] a dispensable non-diverse party," though "such authority should be exercised sparingly," *id.* at 837. "[T]he triggering factor for the [Court's] authority to dismiss the nondiverse defendant[] to cure the lack of jurisdiction [i]s the *plaintiff's* motion to enable it to proceed with the case against diverse defendants." *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 543 (6th Cir. 2006).

Although the record contains no such motion, and although no "*per se* rule" requires the Court to consider such a motion, *Newman-Green*, 490 U.S. at 838, the Court will permit Mr. Harrison to file one if he wishes, rather than exercise its authority to sua sponte dismiss this case for lack of jurisdiction. *See Wis. Dep't of Corrs. v. Schact*, 524 U.S. 381, 389 (1998) ("The presence of the nondiverse party automatically destroys original jurisdiction: No party need assert the defect. No party can waive the defect or consent to jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." (citations omitted)); *Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 508–09 (6th Cir. 2006) (acknowledging that federal courts have "an independent duty 'to inquire *sua sponte* whenever a doubt arises

6

as to the existence of federal jurisdiction'" (quoting *Mt. Healthy City Sch. District Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977))); *see generally Patsy v. Bd. of Regents*, 457 U.S. 496, 525 n.10 (1982) (Powell, J., dissenting) ("[I]t would not simply be wrong but indeed would be an unconstitutional invasion of the powers reserved to the states if the federal courts were to entertain cases not within their jurisdiction[.]" (quotation omitted)).

Finally, the Court would be remiss if it did not mention that Defendants have filed motions to dismiss Mr. Harrison's claims under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and for failure to state plausible claims for relief, and those motions are pending. But in light of the Court's serious concerns about the existence of subject-matter jurisdiction, the most prudent use of its limited time and resources is not toward these motions but toward the threshold matter of subject-matter jurisdiction, without which any other judicial ruling will be for naught. *See Prime Rate Premium*, 930 F.3d at 764–65 ("For some 200 years it has been the rule that—no matter the time and resources spent—an appellate court must wipe out everything that has occurred if the lower court lacked jurisdiction." (citing *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004))). So rather than leave those motions pending for an indeterminate period of time, the Court will deny them and will permit Defendants to renew them, if necessary, after ruling on the question of subject-matter jurisdiction. The Court therefore **ORDERS** as follows:

1. In an attempt to preserve diversity jurisdiction, Mr. Harrison may file, by **Monday, December 29, 2025**, a motion under Rule 21, and in that motion, he shall address whether Olistica is a dispensable party and, if so, whether its dismissal from this case will prejudice any of the parties. *See Newman-Green*, 490 U.S. at 838 (stating that courts "should carefully consider whether

the dismissal of a nondiverse party will prejudice any of the parties in the litigation"). Mr. Harrison's failure to file a motion under Rule 21 will result in the dismissal of this case without further notice for lack of subject-matter jurisdiction;

2. The parties shall follow the briefing schedule in Local Rule 7.1(a); and

3. Defendants' motions to dismiss [Docs. 19, 20, 21] are **DENIED with leave to renew** if necessary.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge
